IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA FEB 14 AM 9: 52
SOUTHERN DIVISION

U.S. DISTRICT COURT
N.D. OF ALABAMA

MICHAEL LEWIS and
CLEO JONES,

     Plaintiffs,

vs.                         CASE NO. CV-99-J-2585-S

BUFFALO ROCK COMPANY,

     Defendants.

ENTERED
asl

## MEMORANDUM OPINION    FEB 1 4 2001

     Currently pending before the court is the defendant's motion for summary judgment

(doc. 18), brief and evidence in support of the motion, to which each of the plaintiffs filed

a response in opposition and further evidence (docs. 28 and 29). The defendant thereafter

filed a reply to each of the plaintiffs' oppositions (docs. 37 and 38). The court has reviewed

the motion, the memorandum of law and the evidentiary submissions of the parties.

## I. PROCEDURAL HISTORY

     Plaintiff Lewis commenced this action on September 24, 1999 by filing a complaint

alleging the defendant discriminated against him based on race (black) in violation of the

Civil Rights Act, as amended, of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*.; and 42

U.S.C. §1981. On November 22, 1999, the complaint was amended to state the same causes

of action as to plaintiff Jones.[1]  Both plaintiffs' claims stem from failures to be promoted.

---

[1]Both plaintiffs were employed by the defendant and make similar allegations of
discrimination, although the plaintiffs worked at different locations and did not know each other
prior to this suit being filed. Jones depo. at 89-90. Lewis worked at the Tuscaloosa location.
Shuman affidavit at ¶ 2. Jones worked at the Birmingham location. Jones depo. at 10.



Plaintiff Lewis also claimed that his termination was in retaliation for trying to apply for a promotion, however this claim was dismissed at his deposition.[2]  Lewis depo. at 104. Plaintiff Jones also stated an equal pay claim.

## II. FACTUAL BACKGROUND

In the light most favorable to the plaintiffs, the facts of this case are as follows:

**Plaintiff Michael Lewis**:

Plaintiff Lewis was hired on April 21, 1997, to work for defendant through a temporary agency.[3]  Lewis depo. at 10, 16.  Exhibit 1 to Shuman affidavit.  He loaded trucks in the warehouse on the 3 to 11 shift.  *Id.* at 18, 19.  His supervisor was at first Larry Gardner, who was then replaced by Ray Parker.  *Id.* at 21. Both of the supervisors were white, while all of the other employees on plaintiff's shift were black.  *Id.* at 25.  Lewis was fired by Ray Parker around October 9, 1997.[4]  *Id.* at 30-31; amended complaint at ¶ 9;

---

[2]While Lewis argues that his termination was discriminatory in his response to the defendant's motion for summary judgment, the court finds no such claim has been plead and therefore does not address this claim of plaintiff Lewis.

[3]Lewis was told that when his probationary period with defendant ended, he would become a regular Buffalo Rock employee.  He believes the probationary period was 90 days. Lewis depo. at 26-27. However, Homan testified that he, the supervisor and the person in question would just sit down and talk about that person becoming a full-time Buffalo Rock employee as there were no evaluation forms or progress reports for employees.  Homan depo. at 32-33. *See also* Early depo. at 32-33.

[4]The defendant has submitted evidence that the plaintiff did not work continuously during this period and thus was never removed from probationary status because of his failure to work 90 days continuously.  *See e.g.* defendant's brief as to Lewis at 1-2; exhibit 1 to Shuman affidavit.  The court finds this evidence to be irrelevant as the defendant submitted no evidence of a policy in place which required the plaintiff to complete 90 days of continuous employment to be eligible for a promotion.

plaintiff's response at 2.  He believes his termination was due to his race based on the

defendant's promotion system.  Lewis depo. at 33-34.  The plaintiff explained:

> Because when a position came open -- when a position had come open and,
> you know, they're supposed to put it on the board, but it wasn't on the board,
> so Mr. Jimmy Johnson asked my first cousin about did he want the job.[5]  He
> said no, so my first cousin came to me and asked me, you know.  He told me
> to go see Mr. Johnson, so I went to see Mr. Johnson.  Mr. Johnson said I could
> transfer over there to the -- I forgot the department it was, but over there, so
> I went and talked to him, and so me and Mr. Johnson went and talked to Mr.
> Homan.[6]
>
> Then, at that time, Mr. Homan said wouldn't no blacks ever move up
> in the warehouse.  That was on a Thursday and that Thursday Mr. Parker had
> said that I will see to it you won't be no longer working at Buffalo Rock, and
> so when that Friday came, I was fired.  He said he didn't like me no way, he
> never did like me, so I had witnesses that heard what he said.  Then that Friday
> came and I was gone.[7]

Lewis depo. at 33-34, 42, 50, 57.  The job plaintiff was interested in involved loading and

unloading drink machines, taking the machines to stores, and repairing them.  He believes

this was within the Service department.  *Id.* at 38, 43.  Lewis stated this job would have been

a promotion for him because it paid $7.00 an hour and he was currently earning $5.25 per

hour.  *Id.* at 43-44.  No job description was ever posted for this position.  *Id.* at 48.  However,

Mr. Johnson told him what the job required.  *Id.* at 49.

---

[5]Jimmy Johnson was the supervisor over the drink machines.  Plaintiff's first cousin is
Demetrius Brewer.  Lewis depo. at 42.

[6]Jim Homan a white man, was the warehouse manager.  Lewis depo. at 29, Parker depo.
at 61.

[7]Ray Parker was the night shift foreman at the time in question.  Parker depo. at 61.

The plaintiff further testified at deposition that Mr. Homan told him to talk to Mr. Shuman. Tim Shuman, a white male, is the general manager of the defendant's Tuscaloosa, Alabama location. Shuman affidavit at ¶ 1; Parker depo. at 60-61. Shuman said he could have the open position but he needed to talk to Mr. Homan about it. Lewis depo. at 44, 47. The plaintiff further states Mr. Homan would not give him an answer, but rather stated "stop pestering me, stop bugging me about it. He said won't no blacks ever move up in the warehouse." *Id.* at 44. The plaintiff asked Mr. Homan about it three or four times a week, but is not sure how long elapsed between the position coming open and his termination. *Id.* at 45-46. This could have been as long as one or two months. *Id.* at 47. By affidavit, Demetrius Brewer states he became aware of the position in question in September or October, 1997 and told Lewis about it. Brewer affidavit at ¶ 8. Mr. Homan allegedly stated that no blacks would move up in the warehouse as long as he was running it. Lewis depo. at 112. According to Parker, Homan had the final say-so on who to hire. Parker depo. at 34.

The plaintiff alleges a white man was eventually hired for the position and paid $9.00 an hour, but he does not remember this person's name. Lewis depo. at 58-59, 98. Brewer affidavit at ¶ 8. Lewis states he did not get this position because of his race. Lewis depo. at 99. Shuman stated by declaration that he does not know if there was an opening in the Service Department at the time in question, but no one is paid $9.00 an hour for that type of entry-level position. Shuman declaration at ¶ 3.

By declaration, Ray Parker stated that he fired plaintiff Lewis for poor performance, including standing around and talking and that other employees had complained about

4

plaintiff not doing his share of work. Declaration of Parker at ¶¶ 2-3. *See also* Parker depo. at 51.

The plaintiff further alleges that since he was fired and filed this suit, the defendant has begun promoting blacks.[8] Lewis depo. at 67. He also alleges that defendant failed to post positions and that white individuals normally got the higher paying positions. *Id.* at 99. He explained that positions were not posted to keep the black employees from knowing about them. *Id.* at 100, 101. Shuman stated by declaration that "at least since 1997 we have had a policy against race discrimination." Shuman decalration at ¶ 4. He further states that the plaintiff never complained about race discrimination. *Id.*

**Plaintiff Cleo Jones:**

Plaintiff Jones began working for the defendant at its Birmingham location in 1986. Jones depo. at 9, 10. In 1990 he was promoted to a supervisory position in vending to train others how to work on drink machines. *Id.* at 10-11. Jones regular shift was from 7:00 a.m. to 3:30 p.m. *Id.* at 14. His supervisor was Charles Gissendanner. *Id.* at 12. Jones alleges Gissendanner was hired over him in 1989, although he then taught Gissendanner how to refurbish drink machines. *Id.* at 13. Jones then states Gissendanner was promoted over him in 1996 or 1997. *Id.* At that time, Gissendanner was allegedly promoted to management. Jones depo. at 14, 20, 24. By affidavit, Ken Early, general manager for the defendant in Birmingham, Alabama, states no promotion to a quality control supervisor position occurred

---

[8]This is supported by the declaration of Tim Shuman, who lists numerous promotions of black employees since Lewis was fired. Shuman declaration at ¶ 5.

in July 1996.  Early declaration at ¶¶ 1-2.  Rather, he claims Gissendanner had been performing these functions since 1995 and received additional duties in 1996 for which he did not get an increase in pay.  *Id.* at ¶ 2.  Additionally, Early states Gissendanner received this additional duties because he had a "knack" for repairing machinery which was superior to other employees.  *Id.*

Jones complains that in 1998 or 1999, everyone except he and another gentlemen were given a dollar raise while they only received a quarter.  Jones depo. at 15.  He explains he was told that defendant was trying to raise the pay of the newer employees.  *Id.* at 15.  However, he agrees this was included in the EEOC charge he filed on August 26, 1996.  *Id.* at 17.

That EEOC charge also included an allegation that Jones was not promoted on July 15, 1996 to the Quality Control Supervisor position.[9]  Jones depo. at 22.  The only lack of promotion about which he complains is the position to which Gissendanner was promoted.  *Id.* at 23, 33-34.  Jones states he should have gotten that promotion because he had trained Gissendanner how to do the work in question and was better qualified than Gissendanner.  *Id.* at 24, 27, 30.  From the plaintiff's testimony, the position into which Gissendanner was placed was a new job, created by Ken Early who was in management and over all of them.[10]

---

[9]The EEOC charge states the earliest and most recent dates of discrimination to be July 15, 1996.  Exhibit 1 to Jones depo.

[10]Jones also alleges that Gissendanner was a relative of Early's.  Jones depo. at 42.

*Id.* at 25, 26. Jones received a right to sue notice from the EEOC on May 30, 1997. *Id.* at 83.

As to the disparate pay claim, Jones states that he received fifty cents an hour while less senior white employees received $1.50 an hour. Jones depo. at 34, 41. However, he then agrees that both black and white employees were given $1.50 an hour while he was not. *Id.* at 35, 38-39, 44. Further, Jones admits this was done to try to keep everyone from quitting. *Id.* at 44, 46, 119. Jones states this was the only occasion on which he was discriminated against concerning his pay. *Id.* at 41, 75.

The plaintiff states he talked to Ken Early about the time he filed his EEOC charge and was told he was not going to move up any further, that he had gone as far as he could go. Jones depo. at 32. After he filed his EEOC charge, the plaintiff asked for and received a transfer from "refurb" to "full line vending," with Richard Byford replacing Ken Early and Charles Gissendanner as his supervisors. *Id.* at 57-59, 74. Byford was in turn supervised by Tim Pierce and John Stone. *Id.* at 59.

Jones further testified that open positions were not posted until 1997 or 1998. Jones depo. at 26, 67. He states prior to this time, no one would know what was going on to prevent people from being promoted. *Id.* at 26. Jones states this was done by Ken Early. *Id.* Jones did not apply for any promotions after moving to full line vending. *Id.* at 79.

Jones also claims that he heard racially disparaging remarks on several occasions. He states he overheard Gissendanner call Michael Zeigler a "dumb nigger" behind his back at some point before he filed his EEOC charge. Jones depo. at 51-53. This comment was

7

made to Marvin Rogers, who is black. *Id.* at 52-53. This was the only occasion which he knows of that Gissendanner made a racial comment.[11] *Id.* at 54. He heard Jeff Morris call a black coworker "Buckwheat." *Id.* at 54-55. Jones did not hear any other racial comments. *Id.* at 55.

Jones was terminated in September, 2000, for stealing cigarettes and having a gun in his vehicle.[12] Jones depo. at 99, 101.

### III. STANDARD FOR EVALUATING SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

---

[11]Jones stated that Gissendanner mistreated all the employees, regardless of their race. Jones depo. at 91.

[12]While Jones disputes his termination, he does not allege that it was discriminatory and hence, this court does not consider any of the events surrounding his termination, other than to observe he is no longer employed by the defendant. Jones depo. at 99-109. Jones further does not allege any retaliation claim. *Id.* at 110.

*Celotex Corp.,* 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of genuine issues of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, Fed. R. Civ. Pro. 56(e). In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 587, *see also Anderson,* 477 U.S. at 249.

"The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case .... A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AL Transport,* 229 F.3d 1012, 1023 (11th Cir.2000), quoting *Haves v. City of Miami,* 52 F.3d 918, 921 (11th Cir. 1995). A factual dispute regarding a non-material issue will not preclude the defendant from succeeding on a motion for summary judgment. *Brown v. American Honda Motor Co.,* 939 F.2d 946, 953 (11th Cir.1991).

On motions for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. See *Adickes*

9

*v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). All "reasonable doubts" about the facts and all justifiable inferences are resolved in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). However, all "doubts" need not be so resolved. *Barnes v. Southwest Forest Industries, Inc.,* 814 F.2d 607, 609 (11th Cir. 1987).

## IV. DISCUSSION

### A. Plaintiff Michael Lewis

Plaintiff Lewis alleges that the defendant failed to promote him because of his race. The plaintiff in this case has offered evidence that Homan stated to him that no blacks will ever move up in the warehouse. The court finds that this is circumstantial evidence of why plaintiff was not given the promotion in question. This court must apply a three prong test fashioned by the Supreme Court to focusing the court's examination of the evidence and allegations. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817 (1973); *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248; 252-253; 101 S.Ct. 1089, 1093-1094 (1981); *Busby v. City of Orlando,* 931 F.2d 764, 777 (11th Cir.1991). First, the plaintiff must establish a *prima facie* case of discrimination. *McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. at 1824. Establishment of a *prima facie* case creates a presumption that the employer unlawfully discriminated against the employee. *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094; *Combs v. Plantation Patterns,* 106 F.3d 1519, 1527 (11th Cir. 1997). Meeting this burden creates a presumption of discrimination. *Combs,* 106 F.3d at 1528.

Assuming the employee meets this burden, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the alleged discriminatory employment

action. *Harris v. Shelby County Board of Education,* 99 F.3d 1078, 1083 (11ᵗʰ Cir.1996).

The defendant can feasibly present such strong evidence of a nondiscriminatory rationale

that summary judgment is warranted. *Brown v. American Honda Motor Co., Inc.,* 939 F.2d

946, 950 (11ᵗʰ Cir.1991), *cert. denied,* 502 U.S. 1058 (1992)(quoting *Grigsby v. Reynolds*

*Metals Co.,* 821 F.2d 590. 596 (11ᵗʰ Cir.1987).

Once a defendant presents a legitimate, nondiscriminatory reason for its action, the

presumption of discrimination drops from the case. *Burdine,* 450 U.S. at 255, 101 S.Ct. at

1094 and n. 10.  The plaintiff must then demonstrate by a preponderance of the evidence that

the reason offered by the defendant was not the true reason for the employment decision, but

rather a mere pretext for discrimination. *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. at

1825.  The focus of the case after the defendant meets its burden of production is on the

defendant's subjective intent and the motivation behind the defendant's adverse employment

action directed at plaintiff. *Harris,* 99 F.3d at 1083.

In a "failure to promote case," the plaintiff meets his prima facie burden of proof by

establishing that (1) he is a member of a protected class; (2) he was qualified for the position

for which he applied; (3) he was not selected for the position; and (4) the selected individuals

included non-protected class applicants. *McDonnell Douglas Corp.,* 411 U.S. at 804, 93

S.Ct. at1824;  *Walker v. Mortham,* 158 F.3d 1177, 1186 (11ᵗʰ Cir.1998).  *See also Lee v.*

*GTE Florida, Inc.,* 226 F.3d 1249, 1253 (11ᵗʰ Cir.2000).  In the light most favorable to the

plaintiff, the plaintiff has met this burden.

The court notes that the defendant argues that Lewis has failed to identify a position for which he was not hired, thus prohibiting the plaintiff from establishing he was qualified for that position, which plaintiff must show to meet his burden of proof for a prima facie case. *See e.g., Walker v. Mortham*, 158 F.3d at 1193. This court disagrees. The plaintiff has shown he is a member if a protected class, he has clearly identified a position for which he was qualified, he was not selected and he has alleged a white person was placed in the position in question. This is all plaintiff must show to establish his prima facie case. The defendant has failed to come forward with any legitimate, nondiscriminatory reason the plaintiff was not promoted, and hence, the plaintiff does not need to offer any evidence to rebut such a proffered reason.[13]   *See e.g. Brown v. American Honda Motor Co., Inc.*, 939 F.2d at 949. Furthermore, defendant's argument that "several black employees have been promoted from the warehouse, demonstrating an absence of discrimination" also fails. Defendant's brief as to Lewis at 5. By the defendant's own submissions, each of these promotions occurred after the plaintiff was terminated, and according to the plaintiff, after he filed suit.

As the only claim the plaintiff has alleged in his amended complaint and submitted evidence thereon is his failure to promote claim, as stated under 42 U.S.C. § 1981, and the court finds the plaintiff has established that genuine issue of material fact remain in the case

---

[13]Interestingly, while defendant argues that the plaintiff failed to identify a position to which he was not promoted, defendant then argues that the failure to post this position is not discriminatory because the plaintiff knew about this position and allegedly applied for it. Defendant's brief as to Lewis at 4, 5.

concerning this claim, the court finds that the defendant's motion for summary judgment as it concerned plaintiff Lewis is due to be denied.

### B. Plaintiff Cleo Jones

Plaintiff Jones alleges that the defendant failed to promote him because of his race. The defendant argues that no one was promoted on this occasion. The court finds that even if a promotion occurred, Plaintiff Jones' claims under 42 U.S.C. § 1981 are time-barred. This court applies a two year statute of limitations to claims under 42 U.S.C. § 1981. *See Jones v. Preuit & Mauldin*, 876 F.2d 1480 (11ᵗʰ Cir.1989); *see also Goodman v. Lukens Steel*, 482 U.S. 656, 662-663; 107 S.Ct. 2617, 2622, 96 L.Ed.2d 572 (1987); *Delaware College v. Ricks,* 449 U.S. 250, 255 fn.5, 101 S.Ct. 498, 502, fn.5 (1980) (stating that the statute of limitations in § 1981 cases is that applicable to similar claims under state law).

This case was filed on September 24, 1999; Jones was added November 22, 1999. Even assuming that Jones' claims could somehow relate back to the original complaint, any claims accruing before that September 24, 1997 would be barred. Undisputedly, plaintiff's claims both arose in 1996.

The court finds that even if Jones' claims were not time barred, this court would grant summary judgment to the defendant on both.

### The Unequal Pay Claim:

The same standards set forth above for a failure to promote claim are applicable to this claim of discrimination. The plaintiff has established, and the defendants do not dispute, that Jones received a smaller raise than other employees on one occasion in 1996. However,

13

this plaintiff is unable to show that similarly situated non-black employees were given bigger raises than he was. *See Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir.1997) ("As part of the ... plaintiff's prima facie case, the plaintiff must show that his employer treated similarly situated employees outside his classification more favorably than [himself]."); *Meeks v. Computer Associates, Int'l*, 15 F.3d 1013, 1019 (11th Cir.1994).   By the plaintiff's own testimony, newer employees, both black and white, were given larger raises than plaintiff and others, both black and white, who had been employed longer. *Miranda v. B & B Cash Grocery Store*, 975 F.2d 1518, 1528 (11th Cir.1992).   Neither side here disputes the raise disparity was done to encourage newer employees to stay with the defendant and had no relation to the race of the employee whatsoever.   The defendant's motion for summary judgment on this issue shall be granted by separate order as the plaintiff has failed in his burden to show that a discriminatory reason more than likely motivated the defendant to pay him less than his white counterparts. *Miranda*, 975 F.2d at 1529.

## 42 U.S.C. § 1981

Jones also states a failure to promote claim.  For the reasons set forth above, this court find that the plaintiff's claim is barred by the statute of limitations. *See Lane v. Ogden Entertainment*, 13 F.Supp.2d 1261, 1268 (M.D.Ala.1998).   While Jones, in his response to the defendant's motion for summary judgment argues that this claim is not time-barred under a continuing violation theory, the plaintiff himself testified in deposition that the only position he was denied was the alleged promotion of Gissendanner in 1996.  Plaintiff's claim, as part of his ongoing violation theory, that he is challenging the entire promotion

14

system also does not make his claim timely. Plaintiff is unable to show any current injury from an ongoing violation. *See Knight v. Columbus, Georgia*, 19 F.3d 579, 580-81 (11th Cir.1994) ("Where the employer engaged in a discrete act of discrimination [outside the limitations period], alleging that the discriminatory act continues to adversely affect the employee or that the employer presently refuses to rectify its past violation will not satisfy the [statute of limitations]"). A promotional policy that is continuously in effect still only gives rise to an actionable injury when the employee is actually denied a promotion. *See Thigpen v. Bibb County*, 223 F.3d 1231, 1243-44 (11th Cir.2000).

The continuing violation theory is a creature of Title VII claims, making a claim timely if administrative charges are brought within 180 days of the most recent violation. Such a claim does not expand the amount of time backward for which a plaintiff may recover.[14] In other words, the "continuing violation doctrine does not provide a second chance to file a legitimate claim when the claim was allowed to lapse." *Lane*, 13 F.Supp.2d at 1271.

Plaintiff Jones relies on *McNeil v. Aguilos,* 831 F.Supp. 1079 (SDNY 1993) to salvage his claims. The court finds such reliance to be odd, as in that case the court stated "in actions brought pursuant to § 1981, a court should look to the state statute of limitations for personal injury actions." *McNeil*, 831 F.Supp. at 1084-85; citing *Goodman*, 482 U.S. at 660-662, 101 S.Ct. at 2620-22. The court went on to state that all actions which arose

---

[14]For example, such a plaintiff with a successful claim under Title VII would still be limited to two years of back pay under 42 U.S.C. § 2000e-5(g).

[more than two years] prior are time barred and must be dismissed, allowing only those allegations of denial of promotions within the [two] year period to remain. *McNeil*, 831 F.Supp. at 1084-85. In Alabama, the statute of limitations for personal injury actions is two years, as stated in § 6-2-38(l), Code of Alabama 1975, as amended.

The plaintiff also argues that 28 U.S.C. § 1658 provides a four year statute of limitations in all civil actions arising under an act of Congress, "except as otherwise provided by law." 28 U.S.C. § 1658. While this is an interesting argument, it simply has not been adopted as the law of this Circuit, by which this court is bound. The court finds this argument was squarely and convincingly rejected by Judge Albritton in *Lane v. Ogden Entertainment*, 13 F.Supp.2d 1261 (M.D.Ala.1998).

Even if it was not so barred, this court would still find that the defendant is due judgment in its favor as the plaintiff failed to meet his burden to establish a prima facie case. While the plaintiff argues that Gissendanner was promoted in 1996, the defendant has denied that any such promotion took place. The defendant asserts that Gissendanner was in the same position, with the same pay that he had been in since the previous year. The fact that he was given additional duties in 1996 does not create a new position, only more work for Gissendanner. Hence, the plaintiff fails to establish that a promotion opportunity was even available and therefore he cannot show he was qualified for such a position. *Walker*, 158 F.3d at 1193.

Even if the plaintiff could establish that this was a new position, the defendant met its burden by setting forth a legitimate, non-discriminatory reason for giving these additional

16

duties to Gissendanner that the plaintiff has failed to rebut. *Lee,* 226 F.3d at 1253; *Harris,* 99 F.3d at 1083.

Because the defendant presented a legitimate, nondiscriminatory reason for its action, the presumption of discrimination drops from the case. *Burdine,* 450 U.S. at 255, 101 S.Ct. at 1094 and n. 10.  The plaintiff must demonstrate by a preponderance of the evidence that the reason offered by the defendant was not the true reason for the employment decision, but rather a mere pretext for discrimination. *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. at 1825.  The focus of the case after the defendant meets its burden of production is on the defendant's subjective intent and the motivation behind the defendant's adverse employment action directed at plaintiff. *Harris*, 99 F.3d at 1083.  The plaintiff has simply failed to offer any evidence that the defendant's alleged motivation was not the true reason for the employment decision.

The defendant asserted that Gissendanner was given the additional task of final testing of the machines because he had a "knack" for them.  Early depo. at 58.  Plaintiff alleged that he trained Gissendanner on repairing the machines.  If the court accepts this as true (and the court has no reason to doubt this statement) this does not rebut an assertion that Gissendanner was simply better at such repairs.  While Jones states he taught Gissendanner how to repair the machines and had seniority over Gissendanner, he does not allege that he was better at machine repair than Gissendanner.  In fact, the plaintiff offers no evidence to contradict defendant's evidence that Gissendanner had a "knack."  Further, the plaintiff

17

demonstrates that Gissendanner may be a racist, but not that Early, who made the decision to give Gissendanner the additional duties, had any type of racial bias.

## CONCLUSION

The court having considered the foregoing, and finding that plaintiff Lewis has established genuine issues of material fact sufficient to allow this case to proceed to trial, the court **ORDERS** that the defendant's motion for summary judgment as to plaintiff Lewis is **DENIED**.   The defendant's motion for summary judgment as to plaintiff Jones is **GRANTED** and these claims are **DISMISSED WITH PREJUDICE**.

**DONE** and **ORDERED** this the ___*13*___ day of February, 2001.


INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE